******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## CALIBER HOME LOANS, INC. *v.* MICHAEL A. ZELLER ET AL.
### (AC 43576)

Bright, C. J., and Lavine and Alexander, Js.*

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned by the defendant C Co. The defendant Z had executed a note for a loan that was used to purchase the property that was secured by the mortgage, and that loan was now in default. Prior to the commencement of the foreclosure action, Z quitclaimed his interest in the property to C Co. The plaintiff alleged in its complaint that it was the holder of the note and mortgage. The plaintiff thereafter filed a motion to substitute S Co. as the plaintiff, explaining that, since the commencement of the action, it had assigned the mortgage and note to S Co. The trial court granted the motion to substitute and thereafter the matter was tried to the court. The court concluded that S Co. had been assigned the mortgage and was in possession of the note, endorsed in blank, that C Co. lacked standing to challenge the adequacy of the notice of acceleration and default under the note because it was not a party to the note and mortgage, and rejected C Co.'s special defenses. From the judgment of strict foreclosure, C Co. appealed to this court. *Held*:

1. The trial court's finding that S Co. was in possession of the note, endorsed in blank and, therefore, was the rightful owner of the debt entitled to foreclose on the mortgage was not clearly erroneous, as the record contained evidence that supported the court's finding; S Co. produced the original note, endorsed in blank, and mortgage at trial and presented testimony regarding the history of the documents and how they came to be in S Co.'s possession, testimony which the court was free to credit.

2. The trial court properly determined that C Co. lacked standing to challenge the adequacy of the notice of acceleration and default under the note: contrary to its claim, C Co. was not a foreseeable interested party, the transfer of interest in the property by quitclaim deed from Z to C Co. did not transfer any rights or obligations in the underlying note and mortgage to C Co., and C Co.'s contention that it made payments under the note was belied by the record, which established that payments were made on behalf of C Co. by another entity, and that C Co. made only one payment, and the check was not cashed; moreover, the court did not abuse its discretion in admitting the evidence of notice as a full exhibit, as C Co.'s arguments as to the sufficiency of this evidence had no bearing on the admissibility of the evidence.

3. The trial court did not err in determining that S Co. had proven the amount of the outstanding debt; the court was within its right to credit the evidence submitted by S Co., including witness testimony and an affidavit of debt, in determining the amount of the debt, and the court did not improperly reject the defendant's characterization of the evidence as confusing or conflicting; moreover, the court was free to find that C Co.'s claim that it was unaware that checks that it had submitted for payment had not been accepted was not credible.

4. The trial court properly rejected C Co.'s special defenses of payment, equitable estoppel and unclean hands; the court was free to reject the evidence C Co. submitted in support of its special defense of payment, and C Co. failed to prove that the court's findings of fact were clearly erroneous; moreover, C Co. failed to provide the court with any additional factual basis or legal argument in support of its special defenses of equitable estoppel and unclean hands, beyond what was asserted in its special defense of payment.

5. The trial court abused its discretion by ordering a judgment of strict foreclosure, rather than foreclosure by sale, because there was substantial equity in the property.

Argued November 18, 2020—officially released July 6, 2021

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant Cambridge Holdings, Inc., and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant was defaulted for failure to appear; thereafter, Specialized Loan Servicing, LLC, was substituted as the plaintiff; subsequently, the matter was tried to the court, *Scholl, J.*; judgment of strict foreclosure, from which the defendant Cambridge Holdings, Inc., appealed to this court. *Reversed in part*; *judgment directed*; *further proceedings*.

*Maria K. Tougas*, for the appellant (defendant Cambridge Holdings, Inc.).

*Victoria L. Forcella*, for the appellee (substitute plaintiff).

*Opinion*

ALEXANDER, J. The defendant Cambridge Holdings, Inc. (Cambridge),[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the substitute plaintiff, Specialized Loan Servicing, LLC (SLS). On appeal, the defendant claims that (1) SLS presented insufficient evidence to prove it had standing to foreclose on the mortgage, (2) it had standing to challenge the adequacy of the notice of acceleration and default under the note, (3) SLS presented insufficient evidence to prove the amount of the outstanding debt, (4) it proved its special defenses, and (5) the court erred in rendering a judgment of strict foreclosure. We agree with the defendant only as to its final claim, and therefore we reverse the judgment of strict foreclosure and remand the case with direction to render a judgment of foreclosure by sale.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. On January 10, 1990, the defendant Michael A. Zeller executed a note in the amount of $85,000 in favor of The First National Bank of Boston, which was secured by a mortgage on real property known as 272 Alewife Lane in Suffield (property). The note and mortgage subsequently were assigned to BancBoston Mortgage Corporation and were endorsed in blank on February 20, 1990. On August 15, 2006, Zeller executed a quitclaim deed for his interest in the property in favor of the defendant. On June 24, 2013, the mortgage was assigned by JP Morgan Chase Bank, N.A., as attorney-in-fact for the Federal Deposit Insurance Corporation as Receiver of Washington Mutual Bank formerly known as Washington Mutual Bank, FA, successor in interest to HomeSide Lending, Inc., formerly known as BancBoston Mortgage Corporation, to the original plaintiff, Caliber Home Loans, Inc. (Caliber).

Caliber commenced the present foreclosure action on November 27, 2013. The defendant was named in the original complaint but was not served properly. A judgment of strict foreclosure was rendered on June 23, 2014. On May 20, 2015, Caliber filed a motion to open and vacate the judgment, which was granted on June 1, 2015. Thereafter, on June 9, 2015, Caliber filed a motion to cite in the defendant, which was granted on June 22, 2015. On July 13, 2015, Caliber filed an amended complaint and the defendant filed its answer on October 14, 2015. In its answer, the defendant asserted the special defenses of payment, improper notice of default, improper acceleration of the note and mortgage, equitable estoppel, unclean hands, and waiver.

On January 10, 2018, Caliber assigned the mortgage to SLS. On February 5, 2019, Caliber filed a motion pursuant to Practice Book § 9-16, to substitute SLS as

the plaintiff, which the court granted on March 7, 2019. Thereafter, on May 16, 2019, SLS filed an amended complaint seeking, inter alia, to foreclose the mortgage.[2]

A trial was held before the court, *Scholl, J.*, on May 15, 29, and 30, 2019. On October 23, 2019, the court issued a memorandum of decision in which it rendered a judgment of strict foreclosure. In its decision, the court determined that the mortgage had been assigned by Caliber to SLS, that the note had been endorsed in blank, and that SLS was in possession of the note. The court further determined that the defendant lacked standing to challenge the adequacy of the notice of acceleration and default under the note, stating that the defendant "is not a party to the note and mortgage and therefore has no standing to argue noncompliance with their terms."

On the basis of the testimony and evidence, the court determined that SLS had proven the amount of debt to be $113,111.51 and that the fair market value of the property was $204,000. The court found that the defendant had failed to prove its special defenses of payment, equitable estoppel, unclean hands, and waiver. The court rendered a judgment of strict foreclosure. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that SLS did not present sufficient evidence to prove it had standing to foreclose on the mortgage. The defendant argues that "[n]o document submitted by SLS at trial . . . established that SLS was given authority to foreclose this loan from the owner of this loan." We disagree.

"A determination regarding standing concerns a question of law over which we exercise plenary review." *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, 197 Conn. App. 269, 273, 231 A.3d 386 (2020). Additionally, "[i]n order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013). "If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt." *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 150, 125 A.3d 262 (2015). "The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer." Id.

Furthermore, "[a] trial court's determination that a

party is the owner and holder of a promissory note is reviewed pursuant to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *AS Peleus, LLC* v. *Success, Inc.*, 162 Conn. App. 750, 753–54, 133 A.3d 503 (2016).

In the present case, the trial court determined, on the basis of the evidence before it, that the note was endorsed in blank and that SLS was in possession of the note and mortgage. The record confirms that SLS presented both the operative note and mortgage at trial, and its key witness, Laura Ollier, testified extensively as to the history of both documents and how the documents came to be in SLS's possession. Ollier testified that SLS took over the servicing of the loan in December, 2018, and, as part of that process, received records from the prior loan servicer, Caliber, and incorporated those records into its own business records. See footnote 3 of this opinion. "The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt. . . . The defendant [must] set up and prove the facts [that] limit or change the plaintiff's rights . . . ." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Kydes*, 183 Conn. App. 479, 487, 193 A.3d 110, cert. denied, 330 Conn. 925, 194 A.3d 291 (2018). We agree with the trial court that by producing the note and mortgage at trial, SLS established the presumption that it owned the underlying debt. Therefore, the burden was on the defendant to submit evidence and prove that a separate entity was the owner of the note and debt.

In order to rebut the presumption of ownership of the debt, the defendant must prove that someone else is the owner of the note and, therefore, the debt. As an example, the defendant may show that ownership of the note had passed to another party. In the absence of proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note. See *U.S. Bank,*

*National Assn.* v. *Schaeffer*, supra, 160 Conn. App. 150.

The defendant does not dispute the fact that SLS presented the original note and mortgage at trial. Instead, the defendant argues that "the evidence . . . established that SLS was not the owner of the debt." We are not persuaded. After a careful review of the evidence, the record establishes that the mortgage was assigned by Caliber to SLS on January 10, 2018. The testimony of Laura Ollier confirmed that, as part of the boarding procedure her office undertook when acquiring this debt, the original loan documents, including the note, were held in bailment with counsel because of the present underlying action.[3] The defendant's counsel argued before the trial court that the testimony did not establish that the mortgage and the note pertained to the same underlying debt; however, the court determined that "the note is endorsed in blank and the evidence established that [SLS] is in possession of the note."

"[N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Shearn* v. *Shearn*, 50 Conn. App. 225, 231, 717 A.2d 793 (1998). Given the evidence before it, the court determined that SLS was in possession of the note. SLS produced the note endorsed in blank and, therefore, it is the rightful owner of the debt and entitled to foreclose on the mortgage. Although the defendant disagrees with the court's conclusion as to the facts, the record contains evidence that supports the court's finding. On the basis of our review of the record, we conclude that the court's factual determinations were not clearly erroneous. There is evidence to support its finding that SLS was in possession of both the note and mortgage and, therefore, the court properly concluded that SLS has standing to enforce the underlying debt and to foreclose on the mortgage.

## II

The defendant next claims that the court improperly determined that it lacked standing to challenge the adequacy of the notice of acceleration and default under the note. The defendant further claims that the court improperly admitted into evidence documents that established notice. We are not persuaded by either of the defendant's claims.

"A determination regarding standing concerns a question of law over which we exercise plenary review." *World Business Lenders, LLC* v. *526-528 North Main Street, LLC*, supra, 197 Conn. App. 273.

In its decision, the trial court determined that the defendant "is not a party to the note and mortgage and therefore has no standing to argue noncompliance with

their terms." The court relied on this court's decision in *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 401, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014), for the proposition that "[c]ontract obligations are imposed because of conduct of parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." (Internal quotation marks omitted.) The court reasoned that, because the defendant was not a party to the underlying note or mortgage, it had no standing to argue noncompliance with its terms.

We first consider the defendant's standing claim. The defendant does not contend that it was a party to the making of the note or mortgage. The defendant argues that it was a third-party transferee[4] of the subject property and, therefore, a "foreseeable interested party" under the note and mortgage. As a result of this alleged status, the defendant contends it had standing to challenge the adequacy of the notice of acceleration and default.

The defendant, however, obtained its interest in the property by quitclaim deed from Zeller. A quitclaim deed of title to property that secures a note and mortgage, by itself, does not transfer the rights and obligations in the underlying note or mortgage. See *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 182 ("[The defendant's] act of quitclaiming . . . interest to a third party did not implicate the making, validity or enforcement of the note or mortgage . . . . The defendant remained liable for repayment of the note despite the quitclaim deed to a third party, who took title subject to the mortgage and any potential foreclosure.").

The defendant directs us to paragraph 10 of the note and paragraph 17 of the mortgage to support its argument that those documents contemplate consideration of the claimed legal interest of subsequent transferees of the underlying property. We disagree. Although both paragraphs begin with the phrase "[i]f all or any part of the Property or any interest in it is sold or transferred," these paragraphs contemplate and set forth a procedure whereby, in such circumstance, the lender may accelerate and require immediate payment of the debt.[5] Contrary to the defendant's assertions, these paragraphs do not contemplate that any subsequent transferee of the property is entitled to any rights in the underlying note or mortgage. Instead, these paragraphs are meant to protect the *mortgagee's* interest if a transfer occurs.

The defendant further argues that it was a "foreseeable interested party" because it made payments under the note. This, however, is belied by the record before us. Richard Gleicher, the director of the defendant and

vice president of Premier Capital, LLC (Premier Capital), testified that, although the defendant holds title to the property in this dispute, a separate entity, Premier Capital, "owns" the note and mortgage.[6] Premier Capital made payments on behalf of the defendant, but the defendant itself made only one payment under the note. The one payment by check from the defendant, however, was not cashed. This evidence does not establish that the defendant was a contemplated beneficiary of either the note or the mortgage. Accordingly, we agree with the trial court's conclusion that the defendant is not a "foreseeable interested party" to these documents and lacks standing to challenge SLS's compliance with their terms.

The defendant further argues, however, that, even if it does not have standing to challenge the notice of the acceleration and default under the note, the trial court nonetheless erred by admitting the evidence of notice as a full exhibit in contradiction to its statement that the exhibit would be admitted "based on the expressed condition that it would allow [the defendant] to challenge whether it constituted sufficient notice from the mortgage holder . . . and whether it was in compliance with the mortgage provisions." Specifically, the defendant challenges the trial court's admission as a full exhibit a letter from Vericrest Financial.[7] In support of its argument, the defendant points to the following two statements the trial court made in response to the defendant's objection to the admission of the letter into evidence:

"The Court: [W]hat I think I'll do is I'm going to allow the letter, but you can certainly argue that this is [not]— a sufficient notice, you know—absent any other evidence. But I'll allow the letter as their claim of notice."

"The Court: I'll allow it for the . . . limited purpose of their allegations of notice. You can certainly argue that it's not notice in compliance with the mortgage."

The defendant argues that these statements by the court preconditioned the admission of the evidence "on the basis [that the court] would consider [the defendant's] arguments as to its sufficiency." We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *In re Harlow P.*, 146 Conn. App. 664, 681, 78 A.3d 281, cert. denied, 310 Conn. 957, 81 A.3d 1183 (2013).

In the present case, the record is clear that the trial court admitted the Vericrest Financial letter as a full

exhibit for the purpose of establishing the plaintiff's notice. The trial court advised the defendant that it could make arguments against the weight of this evidence. However, the evidentiary ruling by the court did not preclude the evidence from its consideration nor did the court's ruling amount to a precondition as to the full admission of the letter into evidence. The defendant's claims against the *sufficiency* of the notice had no bearing on the *admissibility* of the evidence. We, therefore, are not persuaded by the defendant's claim that the court abused its discretion in admitting these exhibits into evidence.

### III

The defendant next claims that the trial court erred in its determination that the plaintiff had proved the amount of the outstanding debt. We disagree.

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . As the finder of fact, the court is responsible for weighing the evidence. It is the [fact finder's] right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The court] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [finder of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Hartford*, 160 Conn. App. 677, 702, 127 A.3d 278, cert. denied, 320 Conn. 911, 128 A.3d 954 (2015).

In determining the amount of the debt, the court relied both on the testimony of the plaintiff's witness and on an affidavit of debt admitted into evidence.[8] The court found that the amount of monthly principal and interest under the loan was $714.73 and that the evidence established that the payments made by, or on the behalf of, the defendant, were "insufficient to cover the amount of escrow required for taxes and insurance," thus resulting in the default of the loan. The court noted that no evidence was proffered regarding payments made after July 18, 2013. The defendant claimed to have been unaware that many of the checks it submitted for payment had not been accepted. The court found that the claim was not credible.

The defendant contends that the court erred in its determination because of "confusing" and "conflicting" evidence. In support, the defendant relies on *Cliffside Condominium Assn., Inc.* v. *Cushman*, 100 Conn. App. 803, 921 A.2d 609 (2007), for the proposition that inconsistent and confusing evidence cannot establish the amount of the debt. We are not persuaded.

In *Cliffside Condominium Assn., Inc.*, the trial court determined that "there were numerous inconsistencies

in the testimony and evidence regarding the amount of the debt, including conflicting affidavits offered by the plaintiff as to the amount of the debt and the application of payments made by the defendant." Id., 805. The court found that no debt was owed to the plaintiff and the plaintiff itself had characterized the evidence as " 'somewhat confusing.' " Id. On appeal, this court affirmed the trial court's determination that the plaintiff had failed to meet its burden to prove the amount of debt based on its factual findings that the evidence was conflicting and confusing. Id. The present case is readily distinguishable, however, because here the court found that SLS had proven the amount of debt on the basis of the evidence before it. The defendant has not persuaded us that the court improperly determined the debt from the evidence presented or that it improperly rejected the defendant's characterization of the evidence as confusing or conflicting. The court was fully within its right to credit the evidence before it and to rely on such evidence in its determination of the amount of the debt.

IV

The defendant next argues that the trial court erred in its determination that the defendant had not proven its remaining special defenses of payment, equitable estoppel, and unclean hands.[9] We disagree.

Central to the defendant's argument as to its special defenses is the claim that the court did not appropriately credit the defendant's proffered evidence and Gleicher's testimony. The defendant argues that, "[i]n weighing the credibility of [Gleicher's] testimony and evidence on payment, versus the lack of evidence as to the accuracy of the plaintiff's debt, the defendant's evidence should have been credited . . . ." The defendant points to exhibits showing payments made on the note between 2007 and 2013, and Gleicher's testimony that the payments were sufficient to clear the account. As discussed, however, the trial court noted that no evidence was proffered regarding any payments made after July 18, 2013, and that the defendant's claim that it was unaware that many of the checks submitted for payment had not been accepted/cashed was not credible. Furthermore, Gleicher testified at trial that he did not believe payments for property taxes had been made.

As previously stated, "[n]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Shearn* v. *Shearn*, supra, 50 Conn. App. 231. Our review of the record leads us to conclude that the trial court's findings of fact were not clearly erroneous. See *Brown* v. *Hartford*, supra, 160 Conn. App. 702. As discussed in part III of this opinion, the defendant failed to prove

that the court erred in its determination of the defendant's debt. We therefore conclude that the court properly concluded that the defendant did not prove its special defense of payment.

As to its remaining special defenses of equitable estoppel and unclean hands, the defendant did not provide the trial court or this court with any additional factual basis or legal argument beyond what was asserted in its special defense of payment. "Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed . . . ." (Citation omitted; internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 358–59 n.1, 241 A.3d 133 (2020). We therefore are not persuaded by the defendant's claim that the court improperly rejected its special defenses.

V

Lastly, the defendant claims that the court erred in rendering a judgment of strict foreclosure rather than a judgment of foreclosure by sale. We agree with the defendant.

"In a foreclosure proceeding the authority of the trial court to order either a strict foreclosure or a foreclosure by sale is clear. General Statutes § 49-24 provides: All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending. In interpreting this statute, we have stated that [i]n Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court. . . . The foreclosure of a mortgage by sale is not a matter of right, but rests in the discretion of the court before which the foreclosure proceedings are pending." (Citations omitted; internal quotation marks omitted.) *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 488, 538 A.2d 1027 (1988).

"[C]ritical to the determination of whether the trial court has abused its discretion in rendering judgment of foreclosure by sale rather than strict foreclosure is whether there is substantial equity in the subject property, and whether the sale would generate enough cash to satisfy the junior creditors. . . . [I]f there is

need of a sale to protect the just rights of the parties, we have little fear that the court will not order it. . . . In a foreclosure proceeding the trial court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owner." (Citations omitted; internal quotation marks omitted.) *Brann* v. *Savides*, 48 Conn. App. 807, 811, 712 A.2d 963 (1998).

"[W]e have recognized that when the value of the property substantially exceeds the value of the lien being foreclosed, the trial court abuses its discretion when it refuses to order a foreclosure by sale." (Internal quotation marks omitted.) *US Bank National Assn.* v. *Christophersen*, 179 Conn. App. 378, 394, 180 A.3d 611, cert. denied, 328 Conn. 928, 182 A.3d 1192 (2018).

In the present case, the trial court found that the underlying debt was $113,111.51 and that the fair market value of the property was $204,000. This amounts to a difference of $90,888.49. See *Fidelity Trust Co.* v. *Irick*, supra, 206 Conn. 489–91 (difference of $17,150 between underlying debt and appraisal value determined to be "substantial excess equity" to require foreclosure by sale). In its decision, the trial court based its judgment of strict foreclosure on the plaintiff's request for a judgment of strict foreclosure made in its posttrial brief and the defendant's failure to object to that request. However, the record shows that the posttrial briefs were ordered to be filed simultaneously, thereby not affording the defendant an opportunity to reply. Further, at oral argument before this court, the plaintiff's counsel stated that the plaintiff would agree to a reversal of the trial court's judgment for the limited purpose of ordering a foreclosure by sale. Accordingly, given the equity of the property and the record before us, we conclude that the court abused its discretion by ordering a judgment of strict foreclosure.[10]

The judgment is reversed with respect to the order of strict foreclosure and the case is remanded with direction to order foreclosure by sale and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In its original complaint, the original plaintiff, Caliber Home Loans, Inc., named Michael A. Zeller, Waters Edge Condominium Association, and KMZ, Inc., as defendants. Zeller was defaulted for failing to appear and Waters Edge Condominium Association and KMZ, Inc., were defaulted for failing to plead. The amended complaint filed by SLS likewise named these defendants. We refer to Cambridge as the defendant in this opinion.

[2] The court granted SLS permission to file its amended complaint after the first day of trial.

[3] Specifically, the following colloquy took place:
"[The Court]: What's the boarding process?
"[The Witness]: Your Honor, the boarding process is a highly complicated process that a loan goes through when it's . . . transferred from one servicer to another. The point of that service—the boarding process is to take the documents received from the prior servicer, verify those documents,

that they are the correct documents for that loan, and transfer them while verifying the information and the custody of them into the new servicer's records.

"[The Court]: Okay.

"[The Defendant's Counsel]: But I thought you said SLS didn't take custody of the original documents?

"[The Witness]: We didn't take custody of the original documents because they were being held in a bailment with our attorney.

"[The Defendant's Counsel]: Right. So during the boarding process nobody had the original note and mortgage in SLS.

"[The Witness]: We had copies of the originals.

"[The Defendant's Counsel]: The question is nobody had the original note and mortgage when they boarded the note—

"[The Witness]: No, because we were able to—

"[The Defendant's Counsel]: —and mortgage.

"[The Witness]: —verify they were with counsel.

"[The Defendant's Counsel]: Okay. But did anybody compare the note and mortgage copies with the originals that were in counsel's office in Connecticut when you boarded them?

"[The Witness]: Yes, that is part of the boarding procedures."

[4] "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." (Internal quotation marks omitted.) *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709, 41 A.3d 1077 (2012).

[5] Paragraph 10 of the note and paragraph 17 of the mortgage are identical and provide: "Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

"If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

[6] Specifically, Gleicher testified that "[the defendant] took title to the property . . . . And then Premier Capital, Inc., continued to pay the Washington Mutual mortgage on the prop[erty] . . . ." He further testified that the payments are "paid out on behalf of [the defendant] . . . . The Premier Capital checks, paid by Premier Capital. Premier Capital is affiliated with [the defendant]. [The defendant] has—it owes money to Premier Capital, and it's properly reflected in everybody's books. . . . Premier Capital . . . owns notes and mortgages. When we foreclose on the notes and mortgages, those—the title to the real estate . . . vests in [the defendant]. Premier Capital continues to make the payments on the—on these—on the real estate, but [the defendant] has . . . title to the real estate."

[7] The letter, dated May 4, 2013, and addressed to Zeller, stated that the January 10, 1990 mortgage was in default for failure to make payments. The letter stated, inter alia, that "[f]ailure to cure the default on or before July 3, 2013, may result in acceleration of the sums secured and result in the foreclosure and sale of the property."

[8] The defendant's suggestion in its principal brief that the court improperly relied on the affidavit because it constituted hearsay is without merit. The record shows that it was the defendant's counsel who offered the affidavit into evidence as a full exhibit during her cross-examination of the plaintiff's witness.

[9] Although the defendant argued the additional special defense of waiver before the trial court, it abandoned this defense on appeal.

[10] Additionally, the record shows that the parties entered into a stipulation that issues of priority would be determined after a judgment of foreclosure was rendered. A foreclosure by sale is equitable in this matter to protect the rights of junior creditors and other parties with an interest in the underlying property. Following the trial court's decision, the defendant KMZ, Inc., filed a motion to open the judgment of strict foreclosure and convert the judgment

to a foreclosure by sale, arguing that there is substantial equity above SLS's debt to partially or wholly satisfy KMZ, Inc.'s debt.

———————————————————