******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HOMEBRIDGE FINANCIAL SERVICES, INC.
## *v.* THOMAS M. JAKUBIEC
### (AC 45453)

Suarez, Seeley and Norcott, Js.

*Syllabus*

The original plaintiff, H Co., sought to foreclose a mortgage on certain real property owned by the defendant T. Just before the commencement of the present action, H Co. recorded a lis pendens on the land records regarding the property. T died two days after he had been served with process commencing the present action. The court subsequently granted H Co.'s motion to cite in as defendants, inter alia, T's widow, heirs, beneficiaries, representatives or creditors, and H Co. filed an amended complaint to include these parties. Thereafter, H Co. moved for a judgment of strict foreclosure, and T's widow, R, filed an objection, claiming that she had notified H Co.'s counsel of her contact information but had not received any papers or notice in connection with the foreclosure action. R subsequently filed a motion to dismiss, alleging a lack of personal jurisdiction due to ineffective service of process, and the trial court granted the motion to dismiss with respect to T's estate but noted that the case remained pending as to the other parties cited in by H Co. Several months later, H Co. filed a motion for summary judgment as to liability, contending that the note and mortgage were in default by virtue of nonpayment. R objected to H Co.'s motion for summary judgment and filed an answer and special defenses, including, inter alia, unclean hands. Thereafter, the court granted a motion to substitute F Co. for H Co., as F Co. had acquired the right to collect the debt due on the loan. The court granted F Co.'s motion for summary judgment with respect to liability, determining that F Co. had demonstrated that it was the holder of the note and therefore was entitled to pursue this foreclosure action, that F Co. had established a prima facie case, that the note had been in default for nonpayment for more than three years, and that R failed to present evidence to support her special defenses. Two months later, the court rendered a judgment of strict foreclosure. F Co. subsequently moved to open the judgment and extend the law days to allow for additional time to review a loss mitigation package, which the court granted. More than two years later, during which time a series of motions to open had been granted and R had produced a Probate Court order showing that she had acquired a 100 percent interest in the property pursuant to the laws of intestate succession, R filed a motion stating that she had complied with a court order to provide F Co. with certain documents and sought the enforcement of a new mortgage agreement. Specifically, she contended that she had submitted a completed assumption package, including the required documentation, executed a mortgage in her name, and made a series of scheduled trial payments, which F Co. had failed to apply. F Co. objected, claiming that there was no settlement to enforce. It explained that, at the time R executed the loan modification agreement, she lacked legal title to the property, and F Co. rejected any settlement agreement on that basis. F Co. also asserted that after R had acquired the property, it had offered her a trial period plan, which required three payments. After R failed to make these required payments, F Co. denied R a permanent modification. The court sustained F Co.'s objection with respect to the motion to enforce the settlement and assigned the case to the foreclosure mediation program. More than one year later, R filed a motion for nonsuit, claiming that F Co. failed to abide by the terms of the parties' settlement agreement, to comply with a standing court order by filing a federal mortgage foreclosure moratorium affidavit within fourteen days, and to comply with a subsequent court order requiring the filing of that affidavit by a specific date. R also stated that F Co. had repeatedly returned her payments by issuing checks to T, rather than to R. One day later, F Co. filed the federal mortgage foreclosure moratorium affidavit. F Co. subsequently filed an objection to the motion for nonsuit, arguing that a nonsuit was not warranted because its delay in filing the federal

mortgage foreclosure moratorium affidavit was not the result of any bad faith. The court subsequently denied R's motion for nonsuit. Thereafter, following several sessions, a premediation report was issued by a foreclosure mediator, terminating the mediation as a result of R's failure to submit certain documents. Several months later, F Co. filed a motion for a judgment of strict foreclosure. R filed an objection, contending that the notice required pursuant to the state's Emergency Mortgage Assistance Program (EMAP) (§§ 8-265cc through 8-265kk) had not been provided to T prior to the commencement of this foreclosure action, and, as a result, the court lacked subject matter jurisdiction. R also iterated her claims that F Co. had returned payments she made via a check issued to T and that F Co.'s actions demonstrated an attempt to walk away from the settlement it had offered. R further maintained that F Co.'s conduct constituted unclean hands, and, therefore, it should be barred from seeking foreclosure, an equitable action. F Co. filed a reply to R's objection, in which it provided documents establishing that, although the trial period plan for the loan modification required payments of $1750.36, R had made payments of only $943.35, argued that it was not required to accept insufficient payments, and claimed that, because R had failed to submit documents to the foreclosure mediator as requested, she had failed to provide any proof of compliance with the payment obligations to reinstate the loan. With respect to R's claim regarding the EMAP notice, F Co. indicated that proper notice had been sent to T prior to the commencement of this action, as demonstrated by the inclusion of this information in the materials attached to the motion for summary judgment. Finally, the plaintiff countered that R failed to substantiate her claims related to her unclean hands special defense or plead it properly, and it noted that, under Connecticut law, a lender has no duty to engage in settlement negotiations with a borrower. Following a remote hearing, the court granted F Co.'s motion for a judgment of strict foreclosure and rendered judgment thereon. On R's appeal to this court, *held*:

1. R could not prevail on her claim that the trial court improperly denied her motion to dismiss for lack of personal jurisdiction as a result of improper service; pursuant to statute (§ 52-325 (a)) and the relevant Connecticut Standards of Title (13.7 (B) and 19.1), once H Co. recorded the lis pendens on the land records with respect to the property and properly commenced this action against T by way of abode service prior to his death, R, as the party who acquired T's interest in the property pursuant to the laws of intestate succession, was bound in this foreclosure action to the same extent as if she had been made a party to the action, and F Co., while free to do so, was not required to serve R.

2. R could not prevail on her claim that the trial court improperly denied her motion for nonsuit: the factual predicate underlying R's argument that the nonsuit should have been granted because F Co. breached the parties' modification agreement did not exist, as, contrary to R's insistence, the record did not show that the parties had, in fact, reached a binding settlement and/or loan modification; moreover, with respect to the claims regarding F Co.'s failure to timely submit the federal mortgage foreclosure moratorium affidavit, R failed to demonstrate how she was harmed by F Co.'s conduct or why the court's refusal to enter a nonsuit and dismiss the case, a remedy of last resort, amounted to an abuse of its discretion with respect to the delayed filing of that affidavit.

3. R could not prevail on her claim that the trial court improperly rejected her special defense of unclean hands and rendered a judgment of strict foreclosure for F Co.; although R made bald allegations that F Co.'s conduct warranted the application of the unclean hands doctrine, she failed to provide evidentiary material to support her claim, including any evidence demonstrating that H Co.'s asserted lack of knowledge of her whereabouts when the foreclosure action was commenced was anything more than a mistake or that F Co. participated in wilful misconduct that rose to the level of unclean hands with respect to, inter alia, the return of R's partial payments during the loan modification trial period, its issuance of checks and correspondence to T after his death, and its purportedly improper refusal to process loan modification paperwork.

4. This court declined to address R's claims that the trial court improperly denied her motion to enforce a loan modification agreement, improperly granted F Co.'s motion for summary judgment, and improperly failed to dismiss the foreclosure action as a result of H Co.'s failure to comply

with the EMAP notice requirement, R having failed to adequately brief these claims.

Argued October 5, 2023—officially released January 30, 2024

*Procedural History*

Action to foreclose a mortgage on certain of the defendant's real property, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Cosgrove, J.*, granted the plaintiff's motion to cite in the state of Connecticut et al. as party defendants; thereafter, the plaintiff filed an amended complaint; subsequently, the court, *Cosgrove, J.*, granted the motion to dismiss filed by the defendant Robyn Jakubiec only as to the estate of Thomas M. Jakubiec; thereafter, Freedom Mortgage Corporation was substituted as the plaintiff; subsequently, the court, *Cosgrove, J.*, granted the substitute plaintiff's motion for summary judgment as to liability; thereafter, the court, *Calmar, J.*, denied the defendant Robyn Jakubiec's motion for nonsuit; subsequently, the court, *Hon. Emmet L. Cosgrove*, judge trial referee, granted the substitute plaintiff's motion for judgment of strict foreclosure and rendered judgment thereon, from which the defendant Robyn Jakubiec appealed to this court. *Affirmed.*

*Edward Bona*, for the appellant (defendant Robyn Jakubiec).

*Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

*Opinion*

NORCOTT, J. In this foreclosure appeal, the defendant Robyn Jakubiec, the widow of the defendant Thomas M. Jakubiec (decedent), presents a myriad of challenges in an effort to overturn the judgment of strict foreclosure rendered following the granting of a motion for summary judgment as to liability in favor of the substitute plaintiff, Freedom Mortgage Corporation.[1] We conclude that several of the defendant's claims are inadequately briefed, and the remainder are without merit. Accordingly, we affirm the judgment of the trial court and remand the case for the sole purpose of setting new law days.

The following facts and extensive procedural history are relevant to this appeal. Homebridge Financial Services, Inc. (Homebridge), commenced this action against the decedent on April 16, 2015, via abode service. In its complaint, Homebridge alleged that the decedent owed Equity Source Home Loans, LLC, $212,000, as evidenced by a promissory note dated June 28, 2010, and that he had executed a mortgage for property located at 28 Nelkin Road in Colchester to secure this note. On February 7, 2014, the mortgage was assigned to Real Estate Mortgage Network, Inc., which subsequently changed its name to Homebridge. The note was in default as a result of nonpayment of the required monthly installments since July 1, 2013, and the unpaid balance totaled $201,575.15, plus interest, late charges and collection costs. Near the time of the commencement of this action, Homebridge recorded a lis pendens on the land records regarding the property.[2]

The decedent died two days after he had been served with process commencing the present action. On June 3, 2015, the court granted Homebridge's motion to cite in "the State of Connecticut, Department of Revenue Services and The Widow, Heirs, Beneficiaries, Representatives or Creditors of [the decedent] . . . ." On June 26, 2015, Homebridge filed an amended complaint and included these parties.

On September 4, 2015, Homebridge moved for a judgment of strict foreclosure. Three weeks later, the defendant filed an objection, claiming that she had "received no papers or notice in connection with this matter" and asserting that she had notified the plaintiff's counsel of her contact information. On October 9, 2015, the defendant filed a motion to dismiss alleging a lack of personal jurisdiction due to ineffective service of process. On November 23, 2015, the court granted the defendant's motion to dismiss with respect to the estate of the decedent and noted that the case remained pending as to the other parties cited in by Homebridge. Various filings ensued.

On April 21, 2016, Homebridge filed a motion for summary judgment as to liability pursuant to Practice

Book § 17-44. Specifically, it contended: "Said note and mortgage are now in default by virtue of nonpayment of the monthly installments of principal and interest due on July 1, 2013, and each and every month thereafter, and the plaintiff has exercised its option to declare the entire balance of said note due and payable." On May 12, 2016, the defendant objected to Homebridge's motion for summary judgment and filed an answer and special defenses, including unclean hands, lack of authority to assign the mortgage, destruction of the original note, anticipatory repudiation, and lack of standing. On June 21, 2016, the court granted a motion to substitute the plaintiff for Homebridge, as the plaintiff had acquired the right to collect the debt due on the loan in foreclosure.

On September 29, 2016, the court denied the motion for summary judgment, but, after granting the plaintiff's motion for reconsideration, the court subsequently granted the motion for summary judgment with respect to liability on December 21, 2016.[3] The court determined that the plaintiff had demonstrated that it was the holder of the note and therefore was entitled to pursue this foreclosure action. The court also determined that the plaintiff had established a prima facie case and that the note had been in default for nonpayment since July 1, 2013. It further concluded that the defendant failed to present evidence to support her special defenses. On February 14, 2017, the court rendered a judgment of strict foreclosure, finding that the property's fair market value was $260,000 and the total debt was $274,083.08.

On April 26, 2017, the plaintiff moved to open the judgment and extend the law days to allow for additional time "to review a loss mitigation package." The court granted this motion on May 8, 2017. Additional motions to open were granted and new law days were set. On March 22, 2018, the defendant moved to open and vacate the judgment, claiming that she successfully had entered into a modification agreement and made the three trial payments, as well as the first installment of the new loan agreement offered by the plaintiff, which required a monthly payment of $943.35.[4] The defendant further contended that the plaintiff had sent her a loan modification agreement, which she had executed and returned. The plaintiff objected, arguing that the defendant was neither a borrower on the loan nor a titled owner, and, therefore, the modification was null and void and not a proper ground for opening and vacating the judgment. The court granted the defendant's motion to open and extended the law days. On May 25, 2018, the defendant filed a motion to open the judgment and extend the law days. The defendant claimed that the Probate Court had issued an order granting her a 100 percent interest in the property.[5] The court granted this motion and set new law days.

The plaintiff moved to open the judgment on July 16,

2018, for the purpose of allowing additional time for the completion of a trial modification of the loan agreement,[6] which the court granted, setting new law days. Additional motions to open and the setting of new law days ensued.

On November 18, 2019, the defendant filed a motion stating that she had complied with a court order to provide the plaintiff with certain documents and sought the enforcement of the new mortgage agreement, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993) (*Audubon*). Specifically, she contended that she had submitted a completed assumption package, including the required documentation, executed a mortgage in her name, and made a series of scheduled trial payments, which the plaintiff had failed to apply. The plaintiff objected on November 27, 2019, claiming that there was no settlement to enforce and no grounds to vacate the judgment. It explained that, at the time the defendant executed the loan modification agreement, the defendant lacked legal title to the property, and it rejected any settlement agreement on that basis. It also argued that this modification lacked consideration. More recently, in April, 2019, the plaintiff offered a trial period plan to the defendant, which required three payments of $1750.36. After the defendant failed to make these required payments, the plaintiff denied the defendant a permanent modification.

On December 2, 2019, the court sustained the plaintiff's objection with respect to the motion to enforce the settlement and overruled it with respect to the motion to open. It also assigned the case to the foreclosure mediation program. On September 10, 2021, following several sessions, a premediation report was issued by a foreclosure mediator, terminating the mediation as a result of the defendant's failure to submit certain documents.

On June 28, 2021, the defendant filed a motion for nonsuit pursuant to Practice Book § 14-3,[7] claiming that the plaintiff failed (1) to abide by the terms of the parties' settlement agreement, (2) to comply with a September 24, 2020 standing order by filing a federal mortgage foreclosure moratorium affidavit within fourteen days, and (3) to comply with the June 10, 2021 order requiring the filing of the federal mortgage foreclosure moratorium affidavit by June 25, 2021. In this motion, the defendant further stated that the plaintiff repeatedly had returned payments the defendant made to the plaintiff via checks made out to the decedent, rather than to the defendant. In addition to an order of nonsuit, the defendant requested reasonable attorney's fees. One day later, the plaintiff filed the federal mortgage foreclosure moratorium affidavit.

On July 9, 2021, the plaintiff filed an objection to the motion for nonsuit. After summarizing the lengthy

procedural history of this case, the plaintiff argued that a nonsuit was not warranted because its delay in filing the federal mortgage foreclosure moratorium affidavit was not the result of any bad faith.[8] On August 2, 2021, the court denied the defendant's motion for nonsuit.

On March 21, 2022, the plaintiff filed a motion for a judgment of strict foreclosure.[9] Ten days later, the defendant filed an objection to the plaintiff's motion for a judgment of strict foreclosure. In her objection, the defendant contended that the required notice, pursuant to the Emergency Mortgage Assistance Program (EMAP), General Statutes §§ 8-265cc through 8-265kk,[10] was not provided to the decedent prior to the commencement of this foreclosure action, and, as a result, the court lacked subject matter jurisdiction.[11] Additionally, the defendant iterated her claims that the plaintiff had returned payments she made via a check issued to the decedent and that the plaintiff's actions demonstrated an attempt "to walk away from the settlement it had offered . . . ." The defendant further maintained that the plaintiff's conduct constituted unclean hands and, therefore, it should be barred from seeking foreclosure, an equitable action. Specifically, the defendant contended that the "record is replete with numerous actions taken by the plaintiff requiring that it be denied foreclosure. Among these included submitting a false affidavit as to the lack of knowledge as to the defendant's residence and whereabout[s]. These acts have included refusal of trial payments, confusion of amounts due, repeated notices directed to the [decedent], checks written out to the [decedent], and material failure to comply with EMAP." Finally, she stated that the plaintiff "offered and agreed to functional reformation of the mortgage to place the loan in the defendant's name instead of [the decedent's] name. The plaintiff has repeatedly acted contrary to what it agreed to."

On April 1, 2022, the plaintiff filed a reply to the defendant's objection. Therein, it provided documents establishing that the trial period plan in 2019 for the loan modification required payments of $1750.36, and the defendant had made payments of only $943.35. The plaintiff further argued that it was not required to accept insufficient payments. Next, the plaintiff claimed that in August and September, 2021, the defendant failed to submit documents to the foreclosure mediator as requested. She failed, therefore, to provide "any proof" of compliance with the payment obligations to reinstate the loan. With respect to the defendant's claim regarding the EMAP notice, the plaintiff indicated that proper notice had been sent to the decedent on January 13, 2015, prior to the commencement of this action, as demonstrated by the inclusion of this information in the materials attached to the motion for summary judgment. Turning to the defendant's special defense of unclean hands, the plaintiff countered that she had failed to substantiate her claims or plead the defense

properly. Finally, it noted that, under Connecticut law, a lender has no duty to engage in settlement negotiations with a borrower.

On April 21, 2022, following a remote hearing, the court granted the plaintiff's motion for a judgment of strict foreclosure. As of March 30, 2022, it found that the debt totaled $416,641.77 and the fair market value of the property was $275,000. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the complaint should have been dismissed as a result of improper service. Specifically, she argues that the plaintiff engaged in a pattern of conduct to evade the requirement to provide her with actual notice in accordance with General Statutes § 52-57 and that, as a result, the court lacked personal jurisdiction over the defendant. The plaintiff counters that the decedent was served properly and that, pursuant to General Statutes § 52-325 (a), following the recording of a lis pendens, any person acquiring an interest in the property shall be bound by all proceedings to the same extent as if she were made a party to the action; therefore, it was not required to serve the defendant in this case. We agree with the plaintiff.

As previously stated in this opinion, Homebridge, the original plaintiff, commenced this action against the decedent by abode service on April 16, 2015, two days before he died. On May 14, 2015, Homebridge filed a motion for order of notice stating that all reasonable efforts to ascertain information regarding the widow, heirs, beneficiaries, representatives, or creditors of the decedent had failed, and therefore it sought an order directing that notice of the foreclosure action to these entities be made by publication in the Norwich Bulletin newspaper. On June 3, 2015, the court issued an order directing that the complaint be amended on or before July 9, 2015, to add the widow, heirs, beneficiaries, representatives or creditors of the decedent, and, on June 11, 2015, the court granted the motion for an order of notice by publication.

On September 25, 2015, the defendant filed an objection to Homebridge's then pending motion for a judgment of strict foreclosure.[12] On October 9, 2015, the defendant filed a motion to dismiss pursuant to Practice Book § 10-30. Therein, she claimed that Homebridge "misrepresented or failed to accurately report to the court that [she] had contacted [Homebridge's counsel] several times after [the decedent] had passed . . . to relay this information and her contact information as executor of the estate on May 4, 2015. . . . [Homebridge] was required to effectuate abode service on [the defendant], which it did not and actively chose not to do, instead opting for a method least likely to provide

any substantial notice. . . . The complaint should be dismissed for lack of personal jurisdiction."[13] The court granted the motion to dismiss only as to the estate of the decedent.

On December 28, 2015, the defendant moved to dismiss the action as to herself and the decedent. She claimed that, as a result of the dismissal of the action against the estate, the foreclosure should be dismissed in its entirety. On January 6, 2016, Homebridge filed an objection, arguing that "this action is saved by Connecticut's lis pendens statute [§ 52-325 (a)]." It stated that on or about April 13, 2015, Homebridge caused a lis pendens to be recorded on the land records. Relying upon § 52-325 (a) and standards 13.7 and 19.1 of the Connecticut Standards of Title,[14] the plaintiff asserted that, because the lis pendens had been recorded on the land records and the decedent had been served prior to his death, it was not required to do anything further in order to proceed with the foreclosure action. In its March 4, 2016 memorandum of decision, the court agreed with Homebridge with respect to its argument pertaining to the lis pendens statute and denied the motion to dismiss.

We begin by setting forth the legal principles relevant to a motion to dismiss alleging improper service and the resulting lack of personal jurisdiction. "[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) *People's United Bank, National Assn.* v. *Purcell*, 187 Conn. App. 523, 526, 202 A.3d 1112 (2019). Stated differently, the "[f]ailure to comply with the statutory requirements of service renders a complaint subject to a motion to dismiss on the ground of lack of personal jurisdiction." *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 401, 21 A.3d 451 (2011), overruled in part on other grounds by *Carpenter* v. *Daar*, 346 Conn. 80, 87, 287 A.3d 1027 (2023). Furthermore, "[b]ecause a challenge to the personal jurisdiction of the trial court is a question of law, our review is plenary." (Internal quotation marks omitted.) *Myrtle Mews Assn., Inc.* v. *Bordes*, 125 Conn. App. 12, 15, 6 A.3d 163 (2010).

The record establishes that Homebridge filed a lis pendens on the land records with respect to the property and that it properly commenced this action against the decedent by way of abode service, prior to his death.[15] In such circumstances, the plaintiff, while free to do so, was not required to serve the defendant. See *Santander Bank, N.A.* v. *Clark*, Superior Court, judicial district of Hartford, Docket No. CV-19-6120472-S (September 29, 2022) (if mortgagor dies subsequent to or during pendency of foreclosure action, heirs or devisees may be substituted but plaintiff is not required to do

so provided lis pendens was recorded prior to death); see also *HSBC Bank USA, N.A.* v. *Pitts Chapel UFW Baptist Church, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV-19-6097142-S (October 11, 2022) (same); *Nationstar Mortgage, LLC* v. *Wigfield*, Superior Court, judicial district of New London, Docket No. CV-15-6024104-S (April 5, 2017) (same). We agree with the reasoning, based on § 52-325 (a) and the Connecticut Standards of Title,[16] set forth in these decisions from the Superior Court.

Section 52-325 (a) provides in relevant part that, "[i]n any action in a court of this state . . . the plaintiff or his attorney, at the time the action is commenced or afterwards . . . may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens . . . . *Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose . . . interest is thereafter obtained, by descent or otherwise, shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action.* . . ." (Emphasis added.) See also Connecticut Bar Association, Connecticut Standards of Title (Cum. Supp. 2014), standards 13.7 (B) and 19.1.

In the present case, Homebridge recorded the lis pendens on the land records and commenced the foreclosure action by serving the decedent. Following the decedent's death, the defendant acquired her interest in the property and, pursuant to § 52-325 (a) and the relevant Connecticut Standards of Title, was bound in this foreclosure action to the same extent as if she had been made a party to the action. Homebridge was not required to serve the defendant under these facts and circumstances. Accordingly, we conclude that the court properly denied the defendant's motion to dismiss for lack of personal jurisdiction.

II

The defendant next claims that the court improperly denied her motion for nonsuit. Specifically, she argues that the plaintiff failed (1) to abide by a settlement agreement reached by the parties, (2) to comply with the standing order, dated September 24, 2020, requiring that a federal mortgage foreclosure moratorium affidavit be filed within fourteen days, and (3) to comply with the subsequent June 10, 2021 court order requiring that the federal mortgage foreclosure moratorium affidavit be filed by June 25, 2021. The plaintiff responds that, despite the defendant's contentions, the parties never entered into a settlement or modification agreement and that its actions, consisting of minor filing errors or delays, were not done in bad faith and were not egregious or sufficient to warrant a nonsuit. We agree with

the plaintiff.

On June 10, 2021, the court issued the following order: "Pursuant to the [September 24, 2020] standing order by Judge Abrams, an AFFIDAVIT—FEDERAL MORTGAGE FORECLOSURE MORATORIUM (JD-CV-172) is required to be filed within [fourteen] days of the issuance of the standing order. Please file the affidavit by June 25, 2021, or the case may be dismissed." On June 25, 2021, the plaintiff requested a two week extension of time to comply with the court's June 10, 2021 order. On June 28, 2021, while the plaintiff's request was pending, the defendant filed a motion for nonsuit. The next day, the court denied the plaintiff's request for an extension, and the plaintiff filed the federal mortgage foreclosure moratorium affidavit. The court denied the defendant's motion for nonsuit on August 2, 2021.

"Practice Book § 17-19 provides in relevant part that [i]f a party fails to comply with an order of a judicial authority . . . the party may be nonsuited or defaulted by the judicial authority." (Internal quotation marks omitted.) *Burton* v. *Dimyan*, 68 Conn. App. 844, 846, 793 A.2d 1157, cert. denied, 260 Conn. 925, 797 A.2d 520 (2002); see generally *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 232, 543 A.2d 728 (1988) (rules of practice plainly authorize trial court to enter nonsuit for noncompliance with its orders). The ultimate decision of whether to order a nonsuit is reviewed under the abuse of discretion standard. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 70–71, 176 A.3d 1167 (2018); see also *West Haven Lumber Co.* v. *Sentry Construction Corp.*, 117 Conn. App. 465, 476, 979 A.2d 591 (denial of motion for nonsuit was not abuse of discretion), cert. denied, 294 Conn. 919, 984 A.2d 70 (2009). Furthermore, our Supreme Court has noted that "the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 71.

Applying these principles, we conclude that the court did not abuse its discretion in denying the defendant's motion for nonsuit. First, the factual predicate underlying the defendant's argument that the nonsuit should have been granted because the plaintiff breached the parties' modification agreement does not exist. Contrary to her insistence, the record does not show that the parties had, in fact, reached a binding settlement and/or loan modification with which the plaintiff subsequently failed to abide.[17] Second, with respect to the claims regarding the plaintiff's failure to timely submit the federal mortgage foreclosure moratorium affidavit, the defendant has failed to demonstrate why the denial of the motion for nonsuit constitutes an abuse of discretion. Instead, she asserts generally that the plaintiff's conduct during the litigation amounted to a violation

of the rules and lack of candor and, as a direct consequence, "dragged out [the litigation] far beyond any need or good faith reason." The defendant has failed to demonstrate how she was harmed by the plaintiff's conduct or why the court's refusal to enter a nonsuit and dismiss the case, a remedy of last resort, amounted to an abuse of its discretion with respect to the delayed filing of the federal mortgage foreclosure moratorium affidavit. See, e.g., *Vaccaro* v. *Loscalzo*, 201 Conn. App. 606, 622–23, 243 A.3d 786 (2020) (our Supreme Court has refused to uphold sanction of nonsuit when other alternatives to dismissal would have permitted case to be heard on merits while ensuring future compliance with court orders), cert. denied, 336 Conn. 908, 244 A.3d 147 (2021); see generally *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 71 (dismissal of action is remedy of last resort); *Usowski* v. *Jacobson*, 267 Conn. 73, 96, 836 A.2d 1167 (2003) (same). Accordingly, we conclude that this claim must fail.

### III

The defendant next claims that the court improperly rejected her special defense of unclean hands. Specifically, she argues that the plaintiff's conduct throughout the litigation warranted the application of this doctrine. The plaintiff, citing *Thompson* v. *Orcutt*, 257 Conn. 301, 313–14, 777 A.2d 670 (2001), counters that this doctrine "is used for fraud or misrepresentation in instances such that there is significant and purposeful fraud or perjury, or 'only when a plaintiff's improper conduct relates in some significant way to the claim he or she now asserts.' " Furthermore, it again argues that it had no duty to take any further steps to notify the defendant of this action following the recording of the lis pendens on the land records and the abode service of the decedent prior to his death, that the defendant was responsible for tendering insufficient monthly payments with respect to the 2019 loan modification, and that it had not failed to comply with the court's orders. We conclude that the defendant's unclean hands defense is without merit.

The following additional facts and procedural history will facilitate our discussion. Homebridge moved for summary judgment as to liability on April 21, 2016. The defendant filed her answer and special defenses on May 12, 2016. In her first special defense, she raised the doctrine of unclean hands.[18] On December 21, 2016, the court granted the plaintiff's motion for summary judgment.[19] In its memorandum of decision, the court explained, inter alia,[20] that the defendant had failed to provide evidentiary material to support her claim of unclean hands.

At the outset, we note that "[i]t is well settled that a trial court in foreclosure proceedings has discretion, on equitable considerations and principles, to withhold foreclosure or to reduce the amount of the stated

indebtedness." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 378, 143 A.3d 638 (2016). "Because an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands may be applicable. It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 746–47, 196 A.3d 328 (2018); see also *U.S. Bank, National Assn.* v. *Moncho*, 203 Conn. App. 28, 53, 247 A.3d 161 (application of unclean hands doctrine rests within sound discretion of trial court and is subject to limited review on appeal), cert. denied, 336 Conn. 935, 248 A.3d 708 (2021); *Bank of America, N.A.* v. *Aubut*, supra, 380 (trial court enjoys broad discretion in determining whether clean hands doctrine applies).

On appeal, the defendant reasserts her bald allegations of the plaintiff's unclean hands. She has failed, however, to direct us to evidence of the plaintiff's "deplorable conduct" that would warrant the application of this doctrine. Although the defendant contends that Homebridge "lied" about its lack of knowledge of her whereabouts when the foreclosure action was commenced, she has not presented any evidence demonstrating that this was anything more than a mistake. Furthermore, the defendant failed to present evidence of the plaintiff's wilful misconduct that rose to the level of unclean hands with respect to, inter alia, the return

of the defendant's partial payments during the modification trial period in 2019, issuing checks and correspondence to the decedent after his death, and the purportedly improper refusal to process modification paperwork. "[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce evidence supporting its special defenses in order to create a genuine issue of material fact . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 745; see also *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 727, 234 A.3d 1115 (2020); see generally *Iacurci* v. *Sax*, 313 Conn. 786, 799, 99 A.3d 1145 (2014) (it is incumbent on party opposing summary judgment to establish factual predicate from which it can be determined, as matter of law, that genuine issue of material fact exists).

The party raising a special defense has the burden of producing evidence supporting its special defense. *U.S. Bank National Assn.* v. *Eichten*, supra, 184 Conn. App. 745; *Ocwen Loan Servicing, LLC* v. *Sheldon*, 208 Conn. App. 132, 137, 264 A.3d 106 (2021). Given the evidentiary lacunae with respect to the special defense of unclean hands, coupled with our deferential standard of review, we conclude that this claim is doomed on appeal. "Simply put, the defendant's allegations and evidentiary submission were insufficient to fall within our Supreme Court's clarification of the making, validity, or enforcement test, as set forth in *U.S. Bank National Assn.* v. *Blowers*, [332 Conn. 656, 675, 212 A.3d 226 (2019)], namely, that allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement of the note and mortgage. . . . Therefore, because the defendant did not . . . meet his burden of proving the facts alleged in his special defense . . . his claim fails." (Citation omitted; internal quotation marks omitted.) *Bank of New York Mellon* v. *Mangiafico*, supra, 198 Conn. App. 731–32. Accordingly, we conclude that the court properly rejected the defendant's claim of unclean hands and rendered a judgment of strict foreclosure in favor of the plaintiff.

IV

Finally, the defendant raises additional claims, all of

which we decline to address on their merits due to inadequate briefing. See *Wells Fargo Bank, N.A.* v. *Tarzia*, 186 Conn. App. 800, 813–14, 201 A.3d 511 (2019). Specifically, the defendant contends that the court should have (1) granted her motion to enforce a settlement, filed pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 804,[21] (2) denied the plaintiff's motion for summary judgment, and (3) dismissed the foreclosure action as a result of the plaintiff's failure to comply with the EMAP notice requirement. After a careful review, we conclude that the defendant failed to brief these issues adequately and therefore we decline to review their merits.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Internal quotation marks omitted.) *Wells Fargo Bank, National Assn.* v. *Doreus*, 218 Conn. App. 77, 79 n.1, 290 A.3d 921, cert. denied, 347 Conn. 904, 297 A.3d 198 (2023); see also *Carmichael* v. *Stonkus*, 133 Conn. App. 302, 307, 34 A.3d 1026, cert. denied, 304 Conn. 911, 39 A.3d 1121 (2012).

The defendant's *Audubon* claim consists of a single paragraph in her appellate brief and a single citation. She has failed to clearly and fully set forth an argument as to why the court committed reversible error with respect to this issue.[22] Her claim regarding the granting of the plaintiff's motion for summary judgment fares no better. It consists of three paragraphs and three case citations that primarily address general legal principles related to summary judgment.[23] The brief baldly asserts that the court overlooked the unclean hands defense. Finally, the defendant's EMAP claim,[24] which contains citation to two cases and consists of three paragraphs, similarly is lacking in the requisite legal analysis.[25]

On the basis of inadequate briefing, we decline to address the merits of the defendant's claims regarding the denial of her *Audubon* motion, the granting of the plaintiff's motion for summary judgment, and the failure to dismiss the foreclosure action due to the lack of compliance with the EMAP notice.

The judgment is affirmed and the case is remanded for the sole purpose of setting new law days.

In this opinion the other judges concurred.

[1] On June 2, 2016, the original plaintiff, Homebridge Financial Services, Inc., filed a motion to substitute Freedom Mortgage Corporation as the plaintiff, as that entity had acquired the right to collect the debt due on the loan in foreclosure. The court granted this motion on June 21, 2016. We therefore refer to Freedom Mortgage Corporation as the plaintiff in this opinion. Additionally, our references in this opinion to the defendant are to Robyn Jakubiec.

[2] "Generally, a notice of lis pendens is simply a notice that, when properly recorded, warns third parties, such as prospective purchasers, that the title to the property is in litigation; [t]he doctrine underlying lis pendens is that a person who deals with property while it is in litigation does so at his peril . . . . An encumbrance is a burden on the title and, as such, impedes its transfer. Ballentine's Law Dictionary (3d Ed. 1969)." (Citation omitted; internal quotation marks omitted.) *Ghent* v. *Meadowhaven Condominium, Inc.*, 77 Conn. App. 276, 284, 823 A.2d 355 (2003); see also *Williams* v. *Bartlett*, 189 Conn. 471, 480, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983).

[3] "In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014); see also *JPMorgan Chase Bank, National Assn.* v. *Syed*, 197 Conn. App. 129, 134, 231 A.3d 286 (2020).

[4] In a subsequent pleading, the plaintiff provided the court with a letter dated April 23, 2019, addressed to the decedent, which provided that a trial period plan requiring three monthly payments of $1750.36 was necessary before a permanent modification of the loan would take effect.

[5] Specifically, the defendant attached a May 22, 2018 order from the Probate Court awarding her a 100 percent interest in the property pursuant to the laws of intestate succession.

[6] In her October 17, 2018 motion to open the judgment and extend the law day for cause, the defendant claimed that she successfully had entered into a modification agreement after making three trial payments and the parties' execution of a new loan agreement.

[7] Practice Book § 14-3 provides in relevant part: "(a) If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action pursuant to Section 11-1, or on its own motion, render a judgment dismissing the action with costs. . . ."

[8] Specifically, the plaintiff asserted that it had requested a two week extension of time to file the federal mortgage foreclosure moratorium affidavit on June 25, 2021, and once that request was denied, it immediately filed said affidavit.

[9] "In a foreclosure proceeding the authority of the trial court to order either a strict foreclosure or a foreclosure by sale is clear. [See General Statutes § 49-24.] . . . In interpreting this statute, we have stated that [i]n Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court. . . . The foreclosure of a mortgage by sale is not a matter of right, but rests in the discretion of the court before which the foreclosure proceedings are pending." (Internal quotation marks omitted.) *Caliber Home Loans, Inc.* v. *Zeller*, 205 Conn. App. 642, 658, 259 A.3d 1, cert. denied, 338 Conn. 914, 259 A.3d 1179 (2021).

General Statutes § 49-24 provides in relevant part: "All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed (1) by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending . . . ."

[10] General Statutes § 8-265ee (a) provides: "On and after July 1, 2008, a mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff, *shall give notice to each homeowner who is a mortgagor by registered, or certified mail, postage prepaid at the address of the*

*property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice.* Such notice shall advise the homeowner of his delinquency or other default under the mortgage and shall state that the homeowner has sixty days from the date of such notice in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the authority with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the homeowner and mortgagee are unable to resolve the delinquency or default." (Emphasis added.) See also *Pennymac Corp.* v. *Tarzia*, 215 Conn. App. 190, 201, 281 A.3d 469 (2022).

[11] On August 1, 2023, our Supreme Court released its decision in *KeyBank, N.A.* v. *Yazar*, 347 Conn. 381, 297 A.3d 968 (2023), which stated: "[W]e conclude that *the EMAP notice requirement is not jurisdictional.* Rather, it is a mandatory condition precedent to the commencement of a foreclosure action." (Emphasis added.) Id., 396; see also *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 221 Conn. App. 475, 483, 302 A.3d 339, cert. denied, 348 Conn. 923, 304 A.3d 445 (2023); *Bank of New York Mellon* v. *Croce*, Superior Court, judicial district of Fairfield, Docket No. CV-18-6072015-S (September 11, 2023).

[12] Specifically, the defendant's motion stated: "The undersigned and widow of the [decedent], having received no papers or notice in connection with this matter, represents to the court that she would not have had any awareness of this case proceeding had she not checked the court's website online. The undersigned also represents that she has called [Homebridge's counsel] and informed them of her contact information, the [decedent's] untimely passing in April and the fact that the [decedent's] affairs are being presently resolved in Probate Court."

[13] In its objection to the defendant's motion to dismiss, Homebridge argued that the service by publication pursuant to General Statutes § 52-68 was sufficient under the facts and circumstances of this case.

[14] Standard 19.1 of the Connecticut Standards of Title provides in relevant part: "[A]*fter the recording . . . of a notice of lis pendens, any party who thereafter acquires an interest in the property being foreclosed, by way* of a conveyance, encumbrance (including mechanics' and all other inchoate liens, certificates of which are recorded subsequently to the notice of lis pendens), or by way *of descent or otherwise, or whose conveyance or encumbrance is subsequently executed or subsequently recorded, is bound by all proceedings taken after such recording to the same extent as if that person were a party defendant in the foreclosure. Any such party may move the court to be made a party defendant. . . .*" (Emphasis added.) Connecticut Bar Association, Connecticut Standards of Title (Cum. Supp. 2014), standard 19.1.

Standard 13.7 (B) of the Connecticut Standards of Title provides in relevant part: "Although the mortgagor, upon granting the mortgage, is divested of all legal title in the mortgaged property, retaining only an equity of redemption which is considered personal property, nevertheless, upon the mortgagor's death, this personal property is converted into real property (again by the operation of the doctrine of equitable conversion), the title to which descends to the mortgagor's heirs or devisees. This results in the following . . . (c) *if the mortgagor dies subsequent to or during the pendency of a foreclosure action, the mortgagor's heirs or devisees, may be substituted for the deceased mortgagor, but the plaintiff is not obliged to move for their substitution as parties defendant, provided the plaintiff recorded a lis pendens at any time prior to the mortgagor's death.*" (Emphasis added.) Connecticut Bar Association, Connecticut Standards of Title, supra, standard 13.7 (B).

We note that, "[a]lthough the standards of title are not controlling authority, they nevertheless are persuasive to the extent that they establish the custom in the legal community . . . and this court previously has found the standards and comments helpful in resolving issues on appeal." (Citation omitted.) *Hannaford* v. *Mann*, 134 Conn. App. 265, 276, 38 A.3d 1239, cert. denied, 304 Conn. 929, 42 A.3d 391 (2012).

[15] In its March 4, 2016 memorandum of decision, the court stated that "[a]s a part of the process served, a lis pendens was recorded in the land records" and that "the service commencing this litigation was accomplished on April 16, 2015."

[16] See footnote 14 of this opinion.

[17] In the plaintiff's November 27, 2019 objection to the defendant's motion to enforce the settlement, it set forth the following summary of the loss mitigation options: "On or about October 12, 2017, the plaintiff offered a modification . . . to the defendant, and she executed it. However, at the time, she was not lawfully siesed of the property. As a result, that modification was not accepted by the plaintiff. The Probate Court did not give her title to the property until April 17, 2018. Most recently on April 23, 2019, the plaintiff offered a trial period plan. . . . The trial plan required three payments of $1750.36. On July 12, 2019, after the defendant refused to comply with the trial period plan, the plaintiff denied the defendant for a permanent modification." (Citation omitted.)

[18] Specifically, the defendant alleged the following: "1. The plaintiff misrepresented to the court that there were no pending probate cases for the [decedent].

"2. The plaintiff misrepresented to the court that it was unable to verify, contact or locate anyone residing in the property subject to this action when in fact the [defendant] had actively contact[ed] the plaintiff and its agents to alert them to the circumstances of [the decedent's] passing and her occupancy of the property.

"3. The purpose of the plaintiff's misrepresentations were to blindside and ambush the defendant with a judgment of foreclosure prior to her even having notice of any pleading or filing made with the court.

"4. Knowing that newspaper notice was wilfully and deliberately insufficient, the plaintiff then reiterated, unethically and dishonestly to the court, that it was sufficient in its objection to the [defendant's] motion to dismiss, which was granted, going so far as to opine its sufficiency 'where it is not reasonably possible or practicable to give more adequate warning' even though the undersigned had gone above and beyond alerting the plaintiff . . . as to her occupancy of the property.

"5. The defendant incorporates each and every allegation of every subsequent special defense as if set forth here.

"6. The above conduct is so morally reprehensible and inequitable that it would shock the conscience of the average person, and the plaintiff ought to be denied the equitable relief of foreclosure because it has failed to speak with candor before the tribunal and has wilfully engaged in the same unethical, unjust conduct."

[19] "[I]t is appropriate for a court to render summary judgment in favor of a plaintiff when the special defenses asserted by a defendant are either not legally viable or do not present a genuine issue of a material fact." *Kazlon Communications, LLC* v. *American Golfer, Inc.*, 82 Conn. App. 593, 596, 847 A.2d 1012 (2004).

[20] In its December 21, 2016 memorandum of decision, the trial court also reasoned that, with respect to the unclean hands special defense, "the conduct complained of in the pleadings does not relate to the validity, making or enforcement of the note and mortgage between [the decedent] and the lender. It would not be a legally sufficient defense." This specific reasoning is no longer proper. In 2019, our Supreme Court stated that "appellate case law recognizes that conduct occurring after the origination of the loan, after default, and even after the initiation of the foreclosure action may form a proper basis for defenses in a foreclosure action [including unclean hands and laches]." *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 672–73, 212 A.3d 226 (2019). It further explained that "equitable and practical considerations inexorably lead to the conclusion that allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement of the note and mortgage." (Citation omitted; internal quotation marks omitted.) Id., 675.

[21] "In *Audubon*, our Supreme Court shaped a procedure by which a trial court could summarily enforce a settlement agreement to settle litigation." *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 815, 277 A.3d 200 (2022); see also *Matos* v. *Ortiz*, 166 Conn. App. 775, 796–97, 144 A.3d 425 (2016).

[22] In its appellate brief, the plaintiff counters that the parties never entered into a settlement, as the defendant failed to provide either good title or adequate payment, and therefore the defendant's reliance on *Audubon* was misplaced. Additionally, as noted in part II of this opinion, the defendant's *Audubon* claim would necessarily fail because the record does not support the contention that the parties had reached a binding settlement and/or loan modification. See *Reiner* v. *Reiner*, 190 Conn. App. 268, 277, 210 A.3d 668

(2019) ("[g]enerally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement" (internal quotation marks omitted)).

[23] The plaintiff argues in its appellate brief that the defendant set forth conclusory statements without referring to evidence that established a genuine issue of material fact.

[24] In its brief to this court, the plaintiff counters that the EMAP notice was not required under the facts and circumstances of this case and that the defendant had raised this issue for the first time on appeal.

[25] Furthermore, the core of the defendant's argument is that the failure to comply with the EMAP notice results in lack of subject matter jurisdiction. Subsequent to the filing of the briefs in the present case, our Supreme Court expressly rejected this contention. See *KeyBank, N.A.* v. *Yazar*, 347 Conn. 381, 398, 297 A.3d 968 (2023); see also *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 221 Conn. App. 483.